56222, 56223. NATIONAL BANK OF GEORGIA v. REFRIGERATED TRANSPORT COMPANY, INC.; and vice versa.

DEEN, Presiding Judge.

On a prior appearance of this case, the defendant appealed from the grant of a judgment notwithstanding the verdict in favor of Refrigerated Transport Co., Inc. (RTC). *National Bank of Ga. v. Refrigerated Transport Co.,* 143 Ga. App. 661 (239 SE2d 551) (1977). This court held that the case was not properly before the court because the trial court had not ruled on appellee's alternative motion for a new trial, and the case was remanded to the trial court with direction that the alternative motion for a new trial be ruled upon as provided in Code Ann. § 81A-150 (c) (1). On remand, the trial court filed an order on December 2, 1977, denying plaintiff's motion for a new trial on each and every ground, but did not vacate the previous order ruling on the j.n.o.v. On January 10, 1978 NBG filed a motion with the trial court requesting that the order of December 2, 1977, be set aside because the case was not appealable by the defendant. On February 3, 1978, the trial court entered an order vacating the December 2 order and ruled that the previous order left the case in a posture from which the results could not be appealed, and entered a new order containing findings of fact and conclusions of law whereby it granted plaintiff's motion for a judgment notwithstanding the verdict and denied plaintiff's alternative motion for a new trial. NBG appeals to this court from the grant of the j.n.o.v. RTC cross appeals and moves to dismiss NBG's appeal contending that defendant did not file a timely appeal and that the trial court was without authority to enter the order of February 3, 1978.

## I.

When NBG appealed from the trial court's order granting plaintiff's motion for a j.n.o.v, the appeal was premature under Code Ann. § 81A-150 (c) (1) because the trial court is also required to rule upon the plaintiff's alternative motion for a new trial before the appeal is properly before this court. In *Speer v. Gemco Elevator Co.,* 134 Ga. App. 360 (214 SE2d 425) (1975), the trial court complied with the first provision of the CPA Rule 50 (c) (1), by ruling on the alternative motion for a new trial when ruling on the motion for a judgment notwithstanding the verdict, but it did not comply with the second provision which requires that the order specify the grounds for granting or denying the motion for a new trial. This court rejected appellant's contentions that the order is void and must be reversed, and remanded the case with direction that the trial court vacate the order and enter a judgment in accordance with CPA Rule § 50 (c) (1) specifying the grounds for granting or denying the motion for a new trial.

In *McConnell v. Brenau College,* 134 Ga. App. 470 (215 SE2d 25) (1975), the case was remanded to the trial court with direction that the lower court rule upon the alternative motion for a new trial. When the case reappeared as *McConnell v. Brenau College,* 135 Ga. App. 711 (218 SE2d 464) (1975), the trial court had vacated the prior order and entered a new order containing findings of fact and conclusions of law on both motions. We believe that this is the correct procedure for the trial court to follow and was implicit in our prior ruling. As the trial court's order of December 2, 1977, was incomplete, it was not error for the trial court to vacate that order and enter a new order on February 3, 1978, which contained findings of fact and conclusions of law on both motions.

## II.

Appellant contends that the trial court erred in granting RTC's motion for a j.n.o.v. As the trial court's findings of fact and conclusions of law are extensive, we adopt them as a part of our opinion:

"1. Plaintiff ('RTC') brought this action for conversion of certain checks accepted by defendant bank (NBG) for deposit in the general corporate checking

account of United Account Systems, Inc. (UAS), a collection agency which had been employed by RTC to collect some overdue accounts. There is no evidence of any authority given by RTC to UAS to indorse, cash, or deposit checks made out to RTC, nor is there any evidence that NBG ever checked or questioned the authority of UAS to indorse and deposit RTC's checks into UAS' general corporate checking account.

"2. Plaintiff's cause of action is grounded in Section 3-419 of the Uniform Commercial Code (Ga. Code § 109A-3—419) which provides in relevant part as follows:

"(1) An instrument is converted when. . .

"(c) it is paid on a forged indorsement. . .

"(3) Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

"The jury returned a verdict for plaintiff for the amount of money remaining in the hands of NBG, the verdict obviously representing a finding that NBG had acted in good faith and according to reasonable commercial standards. Plaintiff moved for a directed verdict at trial, and now moves for judgment notwithstanding the verdict, on the grounds that the jury had no basis for this verdict.

"3. The checks were endorsed by UAS in several ways: one was merely stamped for deposit to the account of UAS; several were stamped with the typewritten or handwritten addition of one of several trade names of RTC or 'agent for RTC' or words to that effect; one was stamped with the stamp that NBG provided for deposit to it and to 'UAS, agent for ———,' with 'Refrigerated Transport' handwritten in the blank space. The evidence at trial was undisputed that the indorsements were unauthorized within the meaning of Ga. Code § 109A-1—201; therefore, they were 'wholly inoperative' as RTC's unless RTC ratified them or is precluded from denying them. Ga. Code

§ 109A-3—404. NBG defends this motion on the basis of ratification, based on the request made to UAS by Mr. White of RTC to return the checks *or money* to RTC, implying that the cashing of the checks was ratified. 'To *infer* ratification, either from declarations or acts, it must appear affirmatively, that at the time of making the declarations, or doing the acts, the principal knew that the agent had performed the act, claimed to have been ratified.' *Mapp v. Phillips,* 32 Ga. 72, 80 (1861). There is no evidence herein that, at the time Mr. White asked for 'the money,' he knew or had any reason to suspect that UAS had cashed or deposited checks made payable to RTC; indeed, he stated that he did not think that any bank would accept such checks. (T. 115-117). It is the opinion of this Court that there was no evidence of ratification.

"4. The bank could not have been a holder in due course without a valid indorsement of a check being deposited by one not the payee. Ga. Code § 109A-3—302(1) (c); see Salesman v. National Community Bank, 246 A.2d 162 (N.J. 1968); E. L. Von Gohren v. Pacific National Bank of Washington, 505 P.2d 467 (Wash. App. 1973).

"5. The only remaining defense is that NBG acted in good faith and in accordance with reasonable commercial standards applicable to the business of banking, which would entitle defendant to the limitation to liability in conversion set out in Ga. Code § 109A-3—419 (3). There are no Georgia cases interpreting the meaning of this exception to Ga. Code § 109A-3—419; however, the general case law on this section of the Uniform Commercial Code yields the following principles.

"The exception set out in Ga. Code § 109A-3—419 (3) is an affirmative defense, the burden of proving it being on the bank. Berkheimers, Inc. v. Citizens Valley Bank, 529 P.2d 903(Ore. 1974). It has been held that the defense could not even be raised where the indorsement was typewritten and therefore suspect on its face; such acceptance by a bank could not be shown to be commercially reasonable. Bank of the West v. Wes-Con Dev. Co., 548 P.2d 563 (Wash. App. 1976). Where the absence of the indorsement of one of two co-payees could be readily detected by an examination of the instrument, the

Oregon Supreme Court refused to allow the defense of commercial reasonableness, although good faith may have been shown. Berkheimers, Inc. v. Citizens Valley Bank, supra, at 905.

"Further authority that good faith and commercial reasonableness are separate requirements, both of which must be met to support the defense of U.C.C. § 3-419 (3), is found in Belmar Trucking Corp. v. American Trust Co., 65 Misc. 2d 31, 316 N.Y.S.2d 247 (N.Y. County Civ. Ct. 1970). While the bank apparently acted in good faith, the court found that the bank had not complied with the standards of commercial reasonableness and was not entitled to the exception. Taking judicial notice of the fact that checks payable to a corporation are not normally indorsed in blank by corporate officers and delivered to third parties, the court held that a collecting bank should inquire as to the reason and authority for the deposit in a third party's account. Willier & Hart, U.C.C. Reporter — Digest § 3-419, A7 (Matthew Bender & Co.).

"A similar conclusion was reached in Salesman v. National Community Bank, supra, where the court held that the failure to make inquiry as to the authority to indorse precluded the defendant from asserting commercial reasonableness, where an attorney had indorsed and deposited to his own trust account a check made payable to his client's husband's estate. In E. L. Von Gohren v. Pacific National Bank of Washington, supra, the court held as a matter of law that a bank which accepted checks made payable to a corporation for deposit into the *personal account* of the bookkeeper could not have acted in a commercially reasonable manner. In a case construing the standard of commercial reasonableness in U.C.C. § 3-406, which is worded identically to that found in U.C.C. § 3-419 (3), the Supreme Court of Missouri held that a bank which accepted a check with a 'patently irregular endorsement' did not comply with reasonable standards. Twellman v. Lindell Trust Co., 534 S.W.2d 83 (Mo. 1976).

"The fact that the depositor of the check is a customer of the bank does not absolve the bank of its duty to inquire. The court in Tubin v. Rabin, 389 F. Supp. 787 (N.DM Tex. 1974), aff'd 533 F2d 255, found that the failure of the bank to authenticate the signature of a non-customer was

commercially unreasonable, although the bank relied upon the word of the co-payee, its customer. Accord, Belmar Trucking Corp. v. American Trust Co., supra.

"Applying these principles to the case *sub judice,* this Court is convinced that NBG cannot avail itself of the exception set out in Ga. Code § 109A-3—419 (3), because of its failure to prove that it acted in a commercially reasonable manner. The indorsements were irregular enough on their face to raise some question as to their validity; and certainly when the checks were offered for deposit into the general corporate checking account of one not the payee, NBG had a duty to inquire to ascertain the authority of UAS to indorse and deposit RTC's checks. NBG could not escape its duty of inquiry by relying on the word of its customer, UAS, Tubin v. Rabin, supra; nor does the fact that NBG could proceed against its customer under the warranty provisions of Ga. Code §§ 109A-3—417 and 109A-4—207 absolve it of the obligation of inquiry, Belmar Trucking Corp. v. American Trust Co., supra.

"Therefore, failure to inquire into the validity of the indorsements in question precluded NBG from asserting the defense of commercial reasonableness of Ga. Code § 109A-3—419(3) as a matter of law."

### III.

Appellant also asserts error in the trial court's award of prejudgment interest as a part of the judgment notwithstanding the verdict. The order awarded RTC a lump sum amount of $55,063.83 which represented $45,289 principal (the face amount of the checks converted) less $7,699.04 already paid to plaintiff by defendant out of the collection agency's checking account, plus prejudgment interest on the amount of the checks converted, less prejudgment interest on the $7,699.04. Appellant argues that only a trover action will lie for conversion of checks and, therefore, interest as an added element of damage is not recoverable. See *Western & A. R. v. Calhoun,* 104 Ga. 384 (30 SE 868) (1898); *Central of Ga. R. Co. v. Butler Marble &c. Co.,* 8 Ga. App. 1 (68 SE 775) (1910); *Beaver v. Magid,* 56 Ga. App. 272 (192 SE 497) (1937). All the cases relied upon by appellant involved a jury verdict. In *Drury v. Holmes,* 145 Ga. 558 (89 SE 487)

(1916), the Supreme Court ruled that ". . . where the plaintiff is entitled to a verdict, it is optional with him whether he will accept an alternative verdict for the property or its value, or whether he will demand a verdict for damages alone, or for the property alone and its hire; and it shall be the duty of the court to instruct the jury to render the verdict as the plaintiff may thus elect. So, where in the trial of an action of trover the jury finds in favor of the plaintiff, . . . awarding him in the verdict a stated sum as principal and a stated sum as interest, the verdict is too uncertain to be upheld, because it is not apparent whether the jury intended to find a verdict for damages with interest or whether the verdict was for the highest proved value of the property and interest." Clearly, this rule contemplates a jury verdict. In the present case, the trial court ruled: ". . . it appearing that RTC's damage is a consequence of the conversion of the stipulated checks are liquidated, RTC is entitled as a matter of law to prejudgment interest from the date of conversion of such instruments. *Anderson v. Georgia,* 2 Ga. 370, 377 (1847); *First National Bank of Atlanta v. State Highway Department,* 219 Ga. 144 (1963); Von Gohren v. Pacific National Bank, 8 Wash. App. 244 (505 P.2d 467) (1973)."

We find no error. The trial court's ruling does not suffer the fatal defect of uncertainty as contemplated by a jury verdict in *Drury v. Holmes,* supra. Under Code Ann. § 109A-3—419 (2) "the measure of liability is presumed to be the face amount of the instrument." Thus, plaintiff does not have an election as to recovery, and the amount of damages is liquidated. This enumeration is without merit.

As this case is affirmed, RTC's cross appeal in Case Number 56223 is dismissed.

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED JUNE 29, 1978 — DECIDED SEPTEMBER 6, 1978 —
CASE No. 56222 REHEARING DENIED SEPTEMBER 21, 1978 —

*Heyman & Sizemore, William H. Major, Hicks,*

*Maloof & Campbell, Robert A. Bartlett, Smith, Cohen, Ringel, Kohler & Martin, Ralph H. Hicks,* for appellant.
*Serby & Mitchell, Louis C. Parker, III,* for appellee.