23874. GRIGGS, Administrator, et al. v. DODSON.

ARGUED JANUARY 9, 1967—DECIDED FEBRUARY 23, 1967— REHEARING DENIED MARCH 9, 1967.

166

*Peter J. Rice*, for appellants.

*D. D. Veal, Martin, Snow, Grant & Napier, Cubbedge Snow,* for appellee.

MOBLEY, Justice. ■ The first question is whether the evidence demanded the verdict for defendant, appellee. See *Code*

*Ann.* § 110-104; *Mason v. Carter,* 223 Ga. 2 (153 SE2d 162); *Security Life & Trust Co. v. Smith,* 220 Ga. 744, 747 (2) (141 SE2d 405); *Kesler v. Kesler,* 219 Ga. 592 (1) (134 SE2d 811); *Smallpiece v. Johnson,* 210 Ga. 310 (1) (80 SE2d 296); *City of Abbeville v. Jay,* 205 Ga. 743 (55 SE2d 129).

The petitioners allege fraud in the procurement of the deeds by Dodson, and that after Dodson had acquired the deeds, he acted fraudulently in not performing the agreement to return the land to them and violated the trust imposed upon him by the agreement. See *Code* § 108-106; *Dodson v. Culp,* 217 Ga. 299 (122 SE2d 109); *Carter v. Rayford,* 215 Ga. 261 (109 SE2d 608); *Pittman v. Pittman,* 196 Ga. 397 (26 SE2d 764).

After careful review of the testimony and documentary evidence in this case, we find the following proven issues of fact to be uncontradicted and to control the ruling herein. Roy Griggs and his brother, William, conveyed their interest in the estates of Luvonia Griggs and of William and Mattie L. Williams, and the heirs of William and Mattie L. Williams also conveyed their interests in said decedents' estates to Dodson in 1958 for the purpose of making an equitable distribution of the properties back to all of the heirs, including petitioners. Roy offered back the $250 in cash which Dodson had given him, apparently as part of the consideration for the agreement. This offer was made prior to the completion of the transfers by other heirs of their interests to Dodson. Upon receipt of deeds from all the heirs, Dodson, on December 9, 1958, delivered a warranty deed to Roy Griggs conveying to him and his brother a fee simple interest in the Skinner tract of land, but retaining timber rights in himself. Griggs, being dissatisfied with Dodson's retaining the timber rights on the Skinner tract, asked him to tear up the deeds and said that he could have the timber he had already cut on the Lane place if he would. But Dodson refused to do this, and Griggs made no offer to restore the $250 or the deed to the Skinner tract to him. However unhappy Griggs was with his transaction with Dodson, he accepted it as shown by his subsequent conduct. Since January 1959, Griggs has applied for a homestead exemption on the Skinner tract property, hence treating it as his own. With regard to the Lane place or tract,

which Griggs contended was to be conveyed back to him by Dodson but which was not, Griggs has not paid the taxes on that property since 1958 when he conveyed it to Dodson. When questioned about the Lane property Griggs stated: "He [Dodson] said he owned it, and so what reason we pay the taxes after he owned it." In addition, Griggs has not offered to restore any of the benefits he received from Dodson since the delivery of the deed to the Skinner tract to him.

The offer to return the $250 in cash to Dodson was made prior to the time when Dodson was to complete performance of his part of the agreement. There was no evidence of fraud in the procurement of the deeds from Griggs or in the making of the agreement. Thus, there was no fraud at this stage of the transaction which would be a ground for rescission of the agreement and entitle petitioners to the relief they seek. *Code* § 20-906.

There could be no ground to rescind the agreement on the basis of failure of consideration since Dodson had, up to the time of the offer to restore the $250, performed his part of the agreement with Griggs as fully as was possible for him to do.

If Dodson had failed to perform his part of the agreement by holding or misappropriating the property of the heirs in violation of an implied trust, by failing to convey to Roy Griggs that property which he had promised him, the acceptance by Griggs of the Skinner tract of land and his subsequent acquiescence in and acceptance of the completed agreement without offering to restore any benefits he had received as a result of it, denied him any right he may have acquired during the course of the transaction to rescind it, to have canceled the deeds he gave to Dodson, and to recover damages for timber cut by Dodson. *Gibson v. Alford,* 161 Ga. 672, 685 (132 SE 442); *Brooks v. Hooks,* 221 Ga. 229, 235 (144 SE2d 96); *State Hwy. Dept. v. Hewitt Contr. Co.,* 221 Ga. 621, 624 (146 SE2d 632).

■ Appellant contends that since he signed his brother, William Griggs', name to the deed purporting to convey William's interest in the properties as an heir, without proper authority to do so, Dodson did not receive any interest in the land from William Griggs and his, William's, motion for directed verdict should have been sustained. Appellee contends that William,

since deceased, was estopped from denying the validity of the deed and relies upon the rule in *Ferguson v. Carter,* 208 Ga. 143 (65 SE2d 600) that "Although a principal is not bound by a sealed instrument, signed by an agent without authority to execute the same under seal, yet, having allowed the opposite party to act upon the instrument in a way to be prejudiced and to his detriment but to the benefit of the principal, the principal is estopped from denying the validity of the instrument. . ." However, it has been established that estoppel arises only where the principal, by his conduct, places an agent in position of apparent authority to do the act (*National Homes, Inc. v. City Plumbing &c. Co.,* 108 Ga. App. 519 (133 SE2d 416); *Bacon v. Dannenberg Co.,* 24 Ga. App. 540 (4) (101 SE 699)); or where "special circumstances" exist which lead a third party reasonably to believe authority was present (Mechem, Law of Agency (2d Ed.) Vol. I, p. 511, § 722); and, further, where the agent was acting within the scope of his authority. *Commissioners &c. of Decatur County v. Curry,* 154 Ga. 378 (114 SE 341); *Williams Wagon Works v. A. T. Small & Sons,* 19 Ga. App. 600 (2) (91 SE 920). In *Ferguson v. Carter,* supra, the evidence as to whether plaintiff had given authority to her daughter to sign her name and make certain arrangements was in conflict. As the evidence would have supported a finding against plaintiff based on estoppel, this court there held that the lower court erred in directing a verdict in favor of the plaintiff.

Authorities generally agree that the distinguishing feature of estoppel is the inducement to another to act to his prejudice, while ratification is the confirmation by one of an act performed by another without authority. Mechem, Law of Agency (2d Ed.) Vol. I, pp. 261, 262, § 349; 2 CJS 1068-1071, § 34; 3 AmJur2d 549, § 160; 7 ALR2d 299.

Here, the direction of a verdict against William Griggs must be deemed a ruling that William had ratified the act of Roy in signing his name to the deed conveying his interests to Dodson. In *Harris v. Underwood,* 208 Ga. 247, 250 (4) (66 SE2d 332) it is held: "Where a principal is informed by his agent of what he has done, unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed." With

regard to the reasonable time limitation it is stated in *Whitley v. James,* 121 Ga. 521, 523 (3) (49 SE 600), "The ratification must, of course, be with the knowledge of the material facts; nor would the principal be required to repudiate the act of his agent immediately upon the discovery that there had been anything which rendered the sale voidable. But if, after knowledge of what the agent had done, the principal made no objection for an unreasonable time, a ratification would result by operation of law. What is a period long enough to bring about such a result would usually be a question for the jury, depending upon the peculiar circumstances of each case."

Roy Griggs testified on cross examination that he had told William "in person the last time I was up there before his death" that Dodson had made the deed to the Skinner Place to them jointly and he last saw William "the year before he died." He also testified that he had written William prior to his death telling him that he had signed his name to the deed conveying William's interest in the estates to Dodson, and that he had told William of his doing this sometime prior to his death. Roy further testified that William "couldn't read very much" and that he might not have known about the deed to the Skinner Place until "I seen him and told him." Since William died in September 1963, the earliest possible time when he could have been notified as to the acceptance of the deed to the Skinner Place by Roy would have been approximately nine months prior to his death, in 1962, the year before. However, it cannot be ascertained when William learned of the deed to which his name was signed by Roy, except that he was told of it by Roy before he died. He could have been told one year or one day before he died. William never repudiated the deed to which Roy signed his name.

The evidence is inconclusive as to whether William had knowledge of Roy's act of signing his name to the deed within a sufficient time before he died, so as to have had a reasonable time within which to repudiate the deed. William's knowledge of Roy's acceptance of the deed to the Skinner Place is not, in itself, sufficient to put him on notice of all the material facts of the transaction, and to demand a finding of ratification.

*Kelley v. Spivey,* 182 Ga. 507, 510 (185 SE 783); *DeVaughn v. McLeroy,* 82 Ga. 687 (4d) (10 SE 211); *Planters & Peoples Mut. Fire Assn. of Ga. v. DeLoach,* 113 Ga. 802 (3) (39 SE 466); *Kephart v. Gulf Refining Co.,* 59 Ga. App. 432 (2) (1 SE2d 221).

The burden of proving ratification is on the party asserting it. *DeVaughn v. McLeroy,* supra; *Glisson v. Burkhalter,* 31 Ga. App. 365 (4) (120 SE 664). As there was no evidence that William Griggs had had a reasonable time, prior to his death and after learning of the act of Roy Griggs signing his name to the deed, within which to repudiate the act, the court erred in directing a verdict in favor of Dodson.

It was not error for the trial judge to refuse to direct a verdict for William Griggs. *Code Ann.* § 110-104 (Ga. L. 1961, p. 216); *Bregman v. Rosenthal,* 212 Ga. 95 (2) (90 SE2d 561); *Townsend v. Rechsteiner,* 195 Ga. 618 (3) (24 SE2d 766).

■ With regard to the Enumeration of error No. 3, as to the exclusion of the testimony of the witness, Ulus Culp, as to what Dodson had told Annie Culp, another heir of the properties, when he approached her about obtaining deeds to her interests, the rule laid down in *DeLoach v. Sikes,* 166 Ga. 39 (3) (142 SE 150) applies directly to the facts in this case. This court there held: "Where during the trial a witness was interrogated by counsel for the party in whose behalf he had been introduced, and the court sustained an objection to the question propounded, an exception to that ruling is without merit unless it be shown that the witness, if permitted to answer the question, would have stated a fact material to the issue under investigation, and what was the fact to which he would have testified, and further that the court was then and there informed as to what answer was expected from the witness by the party then interrogating him." Here, the trial court was not informed that the witness, if permitted to answer, would have testified to a fact material to the issue, and the trial court did not err in excluding the testimony. For other cases on this question see *McKoy v. Enterkin,* 181 Ga. 447 (2) (182 SE 518); *State Hwy. Dept. v. Willis,* 106 Ga. App. 821 (1) (128 SE2d 351) and cases cited therein.

■ Enumeration of error No. 8 is on the trial court's refusal to allow appellant's fourth amendment to the petition. The amendment alleged that those parcels of land of the Williams' estate known as the Eli Pound Tract and the Frances Pound Tract were used interchangeably and that the United States Government claimed the tract on which it had a concrete monument, the Eli Pound Tract, and the estate claimed the other tract, and that defendant cut saw timber from the tracts belonging to the William Williams estate from November 1958 to sometime after June 1959. The amendment did not allege any new matter which would materially affect the cause of action as alleged in the petition which did, in effect, refer to the same tracts of the Williams estate and alleged that defendant had cut timber on those tracts. For this reason, the trial court did not abuse its discretion in refusing to allow the amendment. *Code* §§ 81-1301, 81-1302; *Coker v. Utter,* 152 Ga. 157 (3) (108 SE 538); *Leavitt v. Leavitt,* 149 Ga. 601 (2) (101 SE 670); *Walker v. Sheehan,* 80 Ga. App. 606 (1) (56 SE2d 628).

■ The remaining Enumerations of error, Nos. 4 and 5, are not argued by appellant and we consider them to be abandoned and disregard them. Rule 16 (3) of the Rules of the Supreme Court of Georgia.

*Judgment affirmed in part; reversed in part. All the Justices concur.*