## 45385. TRUST COMPANY BANK OF AUGUSTA v. HENDERSON.

### (373 SE2d 738)

CLARKE, Presiding Justice.

Trust Company Bank (the bank) appeals from the Court of Appeals' affirmance of a jury verdict awarding James S. Henderson, owner and operator of the Ramada Inn, damages, prejudgment interest and attorney fees against the bank in an action brought by Henderson against the bank for conversion. *Trust Co. Bank of Augusta N.A. v. Henderson*, 185 Ga. App. 367 (364 SE2d 289) (1987).

The complaint alleged that the bank accepted a forgery in allowing the inn's general manager, Muia, to cash checks payable to the inn and to deposit checks payable to the inn into his personal account. The total amount of checks deposited to the personal account or cashed was $71,397.33.

After he was hired, Muia was brought into the bank by Henderson and introduced as the inn's general manager. He became friendly with all of the tellers and transacted business on an almost daily basis at the bank. Muia had in his possession an endorsement stamp for the inn which contained a restrictive endorsement. Muia also had authority to write checks on a special checking account used to pay for bands, liquor, and other expenses which could not be charged. The checks cashed by Muia or deposited to Muia's account were endorsed by hand and in blank. The jury awarded Henderson $5,235.52 for checks cashed by Muia. The jury also awarded Henderson $66,161.81 for checks payable to the inn which were deposited into Muia's personal account. In addition, the jury awarded Henderson $5,691.19 in prejudgment interest plus attorney fees. The Court of Appeals affirmed except for writing off the attorney fees.

1. The bank argues OCGA § 7-1-352 protects it from liability. That code section authorizes a bank to honor checks on a fiduciary account when they are signed with the name in which the deposit was entered and absolves the bank from accountability to the persons or organizations who may have an interest in the amount deposited. We read this section to mean that the bank incurs no liability for the uses to which trust funds are applied after they are withdrawn. On the other hand, the statute contains no language protecting the bank against liability for honoring forged or otherwise improper checks or endorsements.

In this case, the bank accepted endorsements which were not authorized by Muia's employer. Because of this action the bank is not shielded by OCGA § 7-1-352 but is subject to the provisions of OCGA § 11-3-419. Subsection (1) (c) of that statute describes an instrument as converted when it is paid on a forged endorsement. Subsection 3 of the same code section absolves a party from liability to the true

owner in conversion or otherwise beyond the amount of any proceeds remaining in his hands when the party has dealt with an instrument or its proceeds in good faith and in accordance with reasonable commercial standards. Therefore, the issue is whether the bank acted in good faith and in accordance with reasonable commercial practices in the banking field.

In this case, there was no evidence that the party to whom the checks were payable authorized Muia to negotiate the checks through unrestricted endorsements. To the contrary, established practice for the negotiation of checks payable to this account was through the use of a restrictive endorsement stamp. Muia endorsed in blank checks payable to the corporation and not only deposited them in his personal account but in some instances received cash for them. Evidence of these facts authorized the jury to find that the bank was put on inquiry as to the propriety of the endorsements. *National Bank of Ga. v. Refrigerated Transport Co.*, 147 Ga. App. 240 (248 SE2d 496) (1978). The verdict of the jury will not be overturned if there is any evidence to support it. *C & S Nat. Bank v. Haskins*, 254 Ga. 131 (327 SE2d 192) (1985). We cannot say that the evidence in the record demanded a finding that the bank proceeded in accordance with reasonable commercial standards in the banking field. For this reason, we do not disturb the jury's verdict.

2. The bank contends that the trial court erred in giving a charge that the jury must find that Muia had authority to endorse and deposit checks in order to find that "Muia had apparent authority to act as he did." The bank had requested a charge that if the jury found that Muia had actual or apparent authority to endorse checks payable to the inn, then payment would not constitute payment over a forged endorsement. The court's charge simply defined apparent authority in the context of this trial and was not erroneous.

3. Finally, the bank argues that it should have been given credit for the bills of the inn totalling $21,438 which Muia paid out of his personal checking account. We cannot agree. Muia testified as to the bills which he allegedly paid. Receipts and cancelled checks were put in evidence. The testimony was uncontroverted. However, the testimony was self-serving, and even though it was uncontroverted, the jury was entitled to disregard it. *Board of Trustees of the Employees' Retirement System of Ga. v. Englade*, 256 Ga. 458 (349 SE2d 703) (1986).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 22, 1988.

*Hull, Towill, Norman & Barrett, Neal W. Dickert,* for appellant.

*Fulcher, Hagler, Reed, Obenshain, Hanks & Harper, James W. Purcell,* for appellee.

*Long, Aldridge & Norman, W. Stell Huie,* amicus curiae.